863 A.2d 423

COMMONWEALTH of Pennsylvania, Appellee,

v.

Roderick JOHNSON, Appellant.

Supreme Court of Pennsylvania.

Submitted Aug. 9, 2004.

Decided Dec. 20, 2004.

Appellant's Motion for Remand
and Reargument Denied Feb. 8, 2005.

Samuel J. B. Angell, Billy Horatio Nolas, Philadelphia, for Roderick Johnson.

Mark Carlyle Baldwin, Reading, Douglas Jerome Waltmann, Amy Zapp, Harrisburg, for Com. of PA.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice NIGRO.

Appellant Roderick Johnson appeals from the order of the Court of Common Pleas dismissing his petition for relief filed pursuant to the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546, as untimely. We affirm.

On November 25, 1997, a jury convicted Appellant of, *inter alia*, two counts of murder in the first degree and, following a penalty-phase hearing, the jury returned a verdict of death against Appellant for each murder count. The trial court officially imposed the sentences of death against Appellant on November 26, 1997. On direct appeal, this Court affirmed Appellant's judgment of sentence, *Commonwealth v. Johnson*, 556 Pa. 216, 727 A.2d 1089 (1999), and the U.S. Supreme Court denied certiorari in February 2000, *Johnson v. Pennsylvania*, 528 U.S. 1163, 120 S.Ct. 1180, 145 L.Ed.2d 1087 (2000).

Appellant then filed his first PCRA petition, which the PCRA court dismissed in October 2001. This Court affirmed in December 2002. *Commonwealth v. Johnson*, 572 Pa. 283, 815 A.2d 563 (2002). On September 11, 2003, Appellant filed the instant PCRA petition, his second, which the PCRA court dismissed as untimely. Appellant appealed to this Court, which has jurisdiction over the matter pursuant to 42 Pa.C.S. § 9546(d).[1]

■ Pursuant to the PCRA, a PCRA petition must be filed within one year of the date that the petitioner's judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment becomes final for purposes of the PCRA "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S. § 9545(b)(3). If a PCRA petition is untimely, this Court has no jurisdiction over that petition. *Commonwealth v. Murray*, 562 Pa. 1, 753 A.2d 201, 202–203 (2000).

Here, Appellant concedes that he did not file his PCRA petition within one year of the date that his judgment became final. Appellant nonetheless contends that this Court must consider his petition as it fits within two of the three excep-

1. 42 Pa.C.S. § 9546(d) provides, in part, that "[a]n order under this subchapter denying a petitioner final relief in a case in which the death penalty has been imposed shall not be reviewable in the Superior Court but shall be reviewable only by petition for allowance of appeal to the Supreme Court."

tions to the PCRA's timeliness requirements provided for by Section 9545(b)(1) of the PCRA. That Section provides:

Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Any petition invoking one or more of these exceptions must be filed within 60 days from the date that the claim could have been presented. *See* 42 Pa.C.S. § 9545(b)(2).

Appellant argues that his petition falls both within the "governmental interference" exception, 42 Pa.C.S. § 9545(b)(1)(i), and the "newly-discovered evidence" exception, *id.* § 9545(b)(1)(ii), to the timeliness requirements, because the Commonwealth withheld impeachment evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In support of his claim, Appellant points to an affidavit written in July 2003 and signed in August 2003 by George Robles, a Commonwealth witness at Appellant's trial. Appellant contends that the Commonwealth withheld valuable impeachment evidence contained in Robles' affidavit, which, according to Appellant, demonstrates that Robles was a drug dealer who colluded with police.[2] As we conclude that Appel-

2. Appellant claims that Robles' July 2003 affidavit contained the following admissions:

lant's underlying *Brady* claim is without merit, we necessarily also conclude that Appellant has failed to show that his petition falls within any of the exceptions to the PCRA's time requirements. *Cf. Commonwealth v. Breakiron*, 566 Pa. 323, 781 A.2d 94, 98 (2001) (Section 9545(b)(1)(i) timeliness exception can be satisfied if appellant establishes meritorious *Brady* claim).

To prevail on a *Brady* claim, an appellant must demonstrate that "the evidence was favorable to [him], either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." *Commonwealth v. Burke*, 566 Pa. 402, 781 A.2d 1136, 1141 (2001). No *Brady* violation occurs where the appellant knew or could have uncovered the evidence at issue with reasonable diligence. *Commonwealth v. Morris*, 573 Pa. 157, 822 A.2d 684, 696 (2003).

Here, Appellant first claims that the Commonwealth withheld information, outlined in Robles' affidavit, that Robles was a member of the NLC, that Robles and other members of the NLC had tattoos and that Robles' tattoo specifically read

1. Robles was a member of the group called Nyte Life Clique ("NLC"), which enabled him to "run the streets," *i.e.*, engage in drug trafficking.
2. Robles and other NLC members all had tattoos and Robles' tattoo specifically read "Gambino."
3. Robles once smoked marijuana with Angel Cabrera, a police officer involved in Appellant's case.
4. Officer Cabrera, Detective Bruce Dietrich and Officer Gerardo Vega would come to Robles for information.
5. Robles' relationship with law enforcement grew out of the fact that he ran the streets from 1994 to 2001.
6. Robles arranged for Appellant, who had been injured at the crime scene, to leave the hospital and come and stay with him for protection. Appellant's PCRA petition, 9/12/03, Affidavit of George Robles. As a threshold issue, we note that Appellant fails to mention in his brief to this Court that Robles actually struck out two statements, numbered 3 and 5 above, in the affidavit and struck out the last portion of the statement numbered 1 above, *i.e.*, that he engaged in drug trafficking. Thus, any of Appellant's arguments that are based on those statements necessarily fail and we will review only those arguments offered by Appellant that are based on the statements in the affidavit that were not crossed out by Robles.

"Gambino." This claim is completely specious. In the first instance, the record establishes that Appellant plainly knew that Robles had a tattoo reading "Gambino," as his trial counsel actually asked Robles about the tattoo during cross-examination. *See* N.T., 11/20/97, at 528–29 (testimony from Robles in response to question from defense counsel that he has a tattoo that says "Gambino"). As for Appellant's contention regarding the fact that Robles was a member of the NLC and that members of the NLC had tattoos, the record clearly reflects that, at the very least, Appellant could have uncovered this evidence prior to trial with reasonable diligence. *See* Aff. of Iris Alvarez, attached to Appellant's Mot. for Certificate of Materiality Pursuant to 42 Pa.C.S. § 5961 *et seq.*, 3/20/01 (stating that, as Appellant's then-girlfriend and Robles' cousin, she possessed information that Robles was a member of the NLC and that members of the NLC had tattoos). Thus, it is clear that there was no *Brady* violation in connection with this information. *See Morris,* 822 A.2d at 696.

■ Appellant also claims that Robles' affidavit contained an admission that he arranged for Appellant to stay at Robles' house after Appellant was injured at the crime scene. However, the record again shows that Appellant must have been aware of this information, given that Appellant did, in fact, stay with Robles after checking himself out of the hospital, contrary to medical advice. Tr. Ct. Findings of Fact in Disposition of Def.'s Pretrial Omnibus Mot., 7/17/97, at 6. Accordingly, as with his claim regarding the tattoos, Appellant has completely failed to establish that the Commonwealth violated *Brady,* as the record shows that he was already well aware of the information allegedly withheld by the Commonwealth. *See Morris,* 822 A.2d at 696.

■ Appellant also bases his *Brady* claim on his contention that the Commonwealth withheld the information offered by Robles in his affidavit that Officers Cabrera and Vega and Detective Dietrich often came to Robles for information. Appellant, however, completely fails to show why this evidence could not have been obtained prior to trial, especially when he

alleges in his own brief that other witnesses were aware that Robles provided police with information. *See* Appellant's Bf. at 9 ("Robles boasted to Allyn Ammoons that Mr. Robles did not have to worry about the police because he ... provided them with information"). Thus, Appellant has simply failed to show that the Commonwealth violated *Brady* and we therefore agree with the PCRA court that Appellant has, in turn, failed to satisfy any of the exceptions to the PCRA's time restrictions based on his *Brady* claim.[3]

Appellant argues, however, that he could not have discovered any of the information contained in Robles' affidavit, even with due diligence, before the taking of Robles' affidavit in July 2003 because Robles threatened defense investigators when they approached him in the summer of 2000, and that "the investigators could not interview Mr. Robles earlier." Appellant's Bf. at 13. This claim is completely disingenuous, however, as Appellant's counsel did in fact interview Robles *twice* prior to Appellant's trial. *See* Tr. Ct. Op., 6/3/98, at 18. Moreover, Appellant does not address why he could not get the information contained in Robles' affidavit from other sources. Instead, Appellant appears to argue that, even if this information had been available prior to the taking of the affidavit, the fact that Robles subsequently *admitted* to these alleged facts brings his claim within the scope of the after-discovered evidence exception. The after-discovered evidence

---

**3.** In apparent support of his general allegation that the Commonwealth withheld information reflecting that Robles had an improper relationship with the police, Appellant seems to aver that the Commonwealth also withheld a letter Robles wrote to Officer Cabrera, evidence that Robles was paying off the police, as well as a material witness bail reduction report relating to Robles. However, given that Appellant has previously brought *Brady* claims, on direct appeal or in his first PCRA petition, based on these very pieces of evidence, it is abundantly clear that Appellant cannot now say that any of this evidence is "newly-discovered" or that he brought this claim within 60 days of the date the claim could have been presented. *See Commonwealth v. Johnson*, 815 A.2d at 573 (rejecting Appellant's *Brady* claim based on bail report and "pay-off" evidence); *Commonwealth v. Johnson*, 727 A.2d at 1094–96 (rejecting Appellant's *Brady* claim based on letter Robles wrote to Officer Cabrera). Thus, Appellant has failed to demonstrate that his petition fits within any of the timeliness exceptions based on a *Brady* claim relating to these particular pieces of evidence.

exception, however, focuses on newly discovered *facts*, not on a newly discovered or a newly willing source for previously known facts. *See* 42 Pa.C.S. § 9545(b)(1)(ii). Thus, a witness' admission of evidence previously available to a petitioner cannot resurrect an untimely PCRA claim as such a result would clearly run contrary to the plain language of the exception that "the *facts* upon which the claim is predicated were unknown to the petitioner...." *See id.* (emphasis added).

In the alternative, Appellant argues that his trial counsel was ineffective because he failed to use either the information referenced above or other impeachment evidence he had in his possession on Appellant's behalf. Apparently, Appellant claims that such ineffectiveness constitutes after-discovered evidence and his petition should therefore be considered timely under the after-discovered evidence exception to the timeliness restrictions. However, this Court has previously held that the after-discovered evidence exception does not apply where a petitioner merely alleges that competent counsel would have presented other claims based on a better evaluation of the facts available at the time of trial. *Commonwealth v. Gamboa–Taylor*, 562 Pa. 70, 753 A.2d 780, 786 (2000); *Commonwealth v. Pursell*, 561 Pa. 214, 749 A.2d 911, 916–17 (2000). Thus, this claim also fails.[4]

In sum, we conclude that Appellant's PCRA petition was untimely and did not meet any of the exceptions to the PCRA timeliness requirements. We therefore affirm the order of

4. Within his argument that his petition fits within two of the exceptions to the timeliness requirements of the PCRA, Appellant argues that dismissing his petition would constitute a miscarriage of justice because the prosecution violated his fundamental constitutional rights, the PCRA court's reasoning was incorrect, and the PCRA court was biased against him. This Court has held, however, that an allegation of miscarriage of justice may not be considered unless the Court has jurisdiction to review the appellant's petition, and such jurisdiction does not exist when the appellant's petition is untimely and fails to satisfy one of the exceptions to the PCRA timeliness requirements. *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 223 (1999); *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 642 (1998).

the PCRA court dismissing the instant petition for lack of jurisdiction.